UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EUGENIO GARDUNO GUEVARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:15-CV-548-TAV-CCS |
| | ) | |
| ALMA SOTO SOTO | ) | |
| | ) | |
| Defendant. | ) | |

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on plaintiff Eugenio Garduno Guevara's Verified Petition for Return of Child to Mexico and for Immediate Issuance of Show Cause Order to Respondent [Doc. 1]. In this motion, plaintiff requests the Court to issue an immediate order prohibiting his child from being removed from this Court's jurisdiction, pending a full evidentiary hearing on plaintiff's petition [*Id.* ¶¶ 30–34]. Plaintiff also seeks for the Court to issue an order directing defendant and the child to appear before the Court for an expedited hearing on the merits of plaintiff's petition [*Id.*].

**I.    Background**

This litigation relates to the alleged wrongful retention of plaintiff's child (hereinafter "the child") in the United States by the child's mother, defendant Alma Soto Soto [Doc. 1]. Plaintiff states that he, defendant, and the child are all citizens of Mexico [*Id.* ¶ 5]. When the child was born in Queretaro, Mexico in October 2010, plaintiff and defendant were living together but were not married [*Id.* ¶¶ 6, 7]. They lived in Coroneo, Guanajuato, Mexico until March 2013, when plaintiff and defendant separated [*Id.* ¶ 8].

At that time, defendant and the child moved approximately twenty minutes away from plaintiff's house to Michoacán, Mexico to live with defendant's parents and maternal grandmother [*Id.* ¶ 9]. From March 2013 until April 13, 2013, plaintiff "regularly visited" the child during the week and on weekends, and provided defendant with "financial support and groceries for the child" [*Id.* ¶ 10].

On April 13, 2013, defendant picked up the child from plaintiff's home, and from that time plaintiff has been unable to find or reach defendant or the child [*Id.* ¶ 11]. Plaintiff alleges he went to plaintiff's residence to find her, and tried to call her cell phone, but to no avail [*Id.* ¶¶ 12–13]. Thereafter, plaintiff initiated proceedings in Coroneo, Guanajuato, Mexico, filed a police report in Michoacan, Mexico, and attempted to obtain assistance from the Mexican government in locating defendant and the child [*Id.* ¶¶ 14–16].

In July 2014, plaintiff alleges he located defendant and the child in Wichita Falls, Texas with defendant's brother, after he saw a photo of defendant and her brother at Wichita Falls Park on Facebook [*Id.* ¶ 17]. In April 2015, plaintiff filed an Application for Return of the Child with the Mexican Central Authority, and the United States Department of State wrote a letter to defendant, asking her to voluntarily return the child to Mexico [*Id.* ¶¶ 18–19]. Plaintiff states that, upon information and belief, defendant did not respond to this letter [*Id.*].

On May 28, 2015, defendant filed a Petition to Determine Custody in the Juvenile Court for Knox County, Tennessee [*Id.* ¶ 20, Doc. 1-9]. The United States Department of State subsequently sent a letter to the presiding judge in that case to inform the judge that

2

Article 16 of the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670 (July 1, 1988) (hereinafter "Hague Convention"), described *infra* Section III, does not permit courts to decide on the merits the rights of custody until it has been determined that the child should not be returned to Mexico under the Hague Convention [Docs. 1 ¶ 21, 1-10].

Plaintiff then filed a verified complaint in this Court on December 11, 2015, asserting a cause of action under the Hague Convention, in which he ultimately seeks for the child to be returned to Mexico [Doc. 1]. In his verified complaint, plaintiff also requests the Court to grant a temporary restraining order (hereinafter "TRO"), preventing defendant from leaving the Court's jurisdiction with the child, and an order directing defendant and the child to appear before the Court for an expedited hearing on the merits of plaintiff's petition for return of the child [*Id.* ¶¶ 30–33]. Summons was issued as to defendant on December 11, 2015, but has not been returned executed.

## II. Standard of Review

In deciding whether to grant a temporary restraining order, the Court must consider: (1) the likelihood that plaintiff "will succeed on the merits of the claim;" (2) whether plaintiff will "suffer irreparable harm without the grant of the extraordinary relief;" (3) whether granting an injunction "will cause substantial harm to others;" and (4) "whether the public interest is advanced" by issuing an injunction. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)). The Sixth Circuit has cautioned that these factors should be balanced, and are "not prerequisites that must be met." *Id.*

Procedurally, a court may issue a temporary restraining order without notice to the opposing party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Rule 65(c) of the Federal Rules of Civil Procedure also provides that a TRO may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). While the Sixth Circuit has stated a district court "errs when it fails to expressly consider the question of requiring a bond when the issue has been raised," it has also found that a court has no mandatory duty to impose a bond as a condition for issuance of injunctive relief. *NACCO Materials Handling Grp., Inc. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 952 (6th Cir. 2007) (alterations, quotation marks, and citations omitted). Thus, if the Court finds injunctive relief appropriate, the Court must address whether a bond is needed, but it need not require one.

### III. Analysis

Plaintiff's verified complaint arises under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–9011 (2015),[1] which is a codification of the Hague Convention. *March v. Levine*, 249 F.3d 462, 465 (6th Cir. 2001). The Hague

---

[1] Formerly codified at 42 U.S.C. §§ 11601–11610 (2000).

Convention attempts to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, pmbl.; *March*, 249 F.3d at 465. The Hague Convention's objectives are "to secure the prompt return of children wrongfully removed or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of the Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1; *McKie v. Jude*, No. CIV. A. 10-103-DLB, 2011 WL 53058, at *4 (E.D. Ky. Jan. 7, 2011). Mexico and the United States are signatories to the Hague Convention. *Basil v. Ibis Aida de Teresa Sosa*, No. 8:07-CV-918-T-27TGW, 2007 WL 2264599, at *3 (M.D. Fla. Aug. 6, 2007).

Pursuant to the ICARA, plaintiff must demonstrate by a preponderance of the evidence that his child was "wrongfully removed or retained in breach of his custody rights under the laws of the Contracting State" in which the child "habitually resided" before he was removed or retained. 22 U.S.C. § 9003(e)(1); Hague Convention, arts. 3, 12; *March*, 249 F.3d at 465–66. ICARA grants state and federal district courts concurrent jurisdiction over claims arising under the Hague Convention. 22 U.S.C. § 9003(a). It further provides that any court exercising jurisdiction over an action brought under the ICARA may take actions under federal or state law that it finds appropriate "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004. The ICARA prohibits courts from making a final determination as to the child's custody; courts

5

instead "merely determine[] which nation should hear the underlying custody claim." *Culculoglu v. Culculoglu*, No. 2:13-CV-00446-GMN, 2013 WL 1413231, at *3 (D. Nev. Apr. 4, 2013) (citing Hague Convention, art. 19).

For the reasons stated below, the Court finds that plaintiff has established each of the four prongs for substantively granting a TRO. The Court also finds that plaintiff has satisfied all of the procedural requirements of granting a TRO, pursuant to Federal Rule of Civil Procedure 65, including establishing why it is necessary to grant this injunction without notice to defendant and why bond should not be required. In making these determinations, the Court is not ruling that the child should be returned to Mexico. Instead, the Court is simply concluding that plaintiff has satisfied the requirements for granting a TRO that preserves the status quo pending a hearing on plaintiff's petition. *See Culculoglu*, 2013 WL 1413231, at *2 (explaining that granting a TRO simply preserves the status quo and is not a determination on the merits).

### A. Likelihood of Success on the Merits

The first prong of the TRO analysis requires plaintiff to demonstrate that his claim has a likelihood of success on the merits. To state a successful claim under the Hague Convention, plaintiff must establish that his child was (1) removed or retained away from the country in which the child was a habitual resident immediately before the removal or retention; (2) that removal or retention was in breach of plaintiff's custody rights pursuant to the laws of the child's habitual residence; and (3) that at the time his child was removed or retained, plaintiff was actually exercising his rights of custody. Hague Convention, art. 3; *Culculoglu*, 2013 WL 1413231, at *3.

The Court will first consider whether the child was removed or retained away from the country in which the child was a habitual resident immediately before the removal or retention. While the Hague Convention does not define the term "habitual residence," the Sixth Circuit has stated that a child's habitual residence is the country where, at the time of the removal or retention, "the child has been present long enough to allow acclimatization, and where this presence has a 'degree of settled purpose from the child's perspective.'" *Jenkins v. Jenkins*, 569 F.3d 549, 556 (6th Cir. 2009) (quoting *Robert v. Tesson*, 507 F.3d 981, 993 (6th Cir. 2007)).

Here, the facts in plaintiff's verified complaint demonstrate that he will likely succeed in establishing that his child habitually resided in Mexico immediately preceding his removal to the United States. Plaintiff states that he, defendant, and the child are all citizens of Mexico and lived in Mexico from the time of the child's birth in October 2010 through April 13, 2013 [Doc. 1 ¶¶ 5–10]. Thereafter, plaintiff was unable to locate defendant and his child until July 2014, when he learned they may be in Wichita Falls, Texas [*Id.* ¶ 17]. Prior to being removed to the United States, plaintiff and defendant were raising their child in Mexico [*Id.* ¶ 7]. The Court finds that, because the verified complaint alleges that the child was born and raised in Mexico prior to being brought to the United States, plaintiff has demonstrated he will likely succeed in demonstrating that the child has a "degree of settled purpose" in Mexico, and thus that Mexico was likely the child's habitual residence immediately before he was removed to the United States. *Jenkins*, 569 F.3d at 556.

Turning next to whether the removal was in breach of plaintiff's custody rights pursuant to the laws of the child's habitual residence—which the Court will consider as being Mexico—the Court finds that plaintiff has established he will likely succeed in demonstrating that he and defendant were jointly exercising custody of the child in Mexico prior to his removal. Plaintiff sets forth in his verified complaint that Mexican law follows the doctrine of *patria potestas*, which is a "series of rights and obligations recognized by law to the parents . . . in relation to their children . . . in order to care for them, protect them, educate them and legally represent them" [Doc. 1-11 p. 1]. The Civil Code for the State of Queretaro, Mexico states that "parental authority/responsibility (*patria potestas*) is exerted by both parents" [Doc. 1-11 p. 2]. Article 402 states that "[w]hen the parents of a child born out of wedlock that were living together separate and in case the parents cannot agree on the matter, the judge will designate which parent will exert parental authority/responsibility" [*Id.*].

In this dispute, it appears that plaintiff and defendant had agreed on both exerting parental authority after they separated, as it is alleged that plaintiff continued to visit with the child and provide the child with financial support [Doc. 1 ¶ 10]. Accordingly, absent a judge establishing which parent will exert parental authority pursuant to Article 402 of the Civil Code for the State of Queretaro, the Court finds that the allegations in the verified complaint show that both plaintiff and defendant had custody of the child. Accordingly, plaintiff has demonstrated that he will likely succeed in establishing that his child's retention in the United States is in violation of his right to joint custody of the child.

8

Finally, plaintiff must demonstrate that he will likely be able to establish that at the time his child was removed to the United States, he was actually exercising his rights of custody. Plaintiff alleges that, while the child lived with defendant, plaintiff "regularly" visited with the child, and provided defendant with financial support and groceries for the child [*Id.*]. Plaintiff's allegations imply that he would have continued to exercise those rights of custody but for defendant's allegedly wrongfully removing the child to the United States. The Court thus finds that plaintiff likely will be successful in establishing that he was actually exercising his rights of custody at the time the child was removed to the United States.

### B. Likelihood of Irreparable Harm Without Grant of the Requested Relief

Next, the Court must consider the likelihood that plaintiff will "suffer irreparable harm without the grant of the extraordinary relief." *Edward Rose & Sons*, 384 F.3d at 261. Plaintiff alleges that, without warning, defendant suddenly stopped returning plaintiff's phone calls and moved out of defendants' mother's house in April 2013 [Doc. 1 ¶¶ 12–13]. Despite plaintiff's attempts, he could not locate defendant until July 2014 [*Id.* ¶ 17].

Based upon the allegations in the verified complaint, the Court finds there is a risk that defendant could continue to conceal the child's location, and thus plaintiff will likely be irreparably harmed in the absence of the requested relief to maintain the status quo. *See Culculoglu*, 2013 WL 1413231, at *5 (holding that plaintiff would likely suffer

9

irreparable harm without a TRO because defendant had previously concealed the location of plaintiff's children from plaintiff).

### C. Whether a TRO Will Cause Substantial Harm to Others

The Court must next consider whether granting an injunction "will cause substantial harm to others." *Edward Rose & Sons*, 384 F.3d at 261. This factor requires the Court to determine if the balance of equities tips in plaintiff's favor. *Culculoglu*, 2013 WL 1413231, at *5. The Court has already determined that there is a risk that defendant could conceal the child's location before the petition is adjudicated. *See supra* Section III.B. Plaintiff also has stated that defendant filed a Petition to Determine Custody in the Knox County Juvenile Court, implying that defendant is residing in Knox County [Docs. 1 ¶ 20; 1-9]. Accordingly, the Court finds that issuing a TRO will not impose a substantial hardship on defendant by requiring her to stay within the Court's jurisdiction, and the risk of defendant concealing the child's location before resolution of this petition outweighs any such potential injury she may suffer. *See id.* (holding that because a TRO "merely maintains the status quo" during the pendency of the petition, and defendant resides in the Court's jurisdiction, the Court is able to conclude that the balance of equities tips in plaintiff's favor).

### D. Whether Issuing a TRO will Benefit the Public Interest

Finally, the Court must consider "whether the public interest is advanced" by issuing an injunction. *Edward Rose & Sons*, 384 F.3d at 261. This factor requires the Court to "consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Culculoglu*, 2013 WL 1413231, at *5 (quoting

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011)). The Sixth Circuit has characterized the Hague Convention as requiring "not only expeditious action by courts under article 11, . . . but use of 'the most expeditious procedures available.'" *March*, 249 F.3d at 474 (citing Hague Convention, art. 2). In fact, even the ICARA contemplates the Court issuing emergency orders to preserve the status quo in these cases. *See* 22 U.S.C. § 9004 (granting courts jurisdiction to take measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition"). Accordingly, the Court finds that the public interest would not be injured by issuing injunctive relief in this case.

## IV. Procedural Requirements for a TRO

Prior to granting a TRO, the Court must find that notice to the defendant is not required.[2] The Court notes that defendant does not have notice of plaintiff's request for a TRO, as summons was issued to defendant on December 11, 2015, and has yet to be returned executed.

Pursuant to Federal Rule of Civil Procedure 65(b), to issue a TRO without notice, the Court must find that the specific facts in plaintiff's verified complaint "clearly show

---

[2] The ICARA provides that notice shall be given "in accordance with the applicable law governing notice in interstate child custody proceedings." 42 U.S.C. § 9003(c). In the United States, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction Act ("UCCJA") govern the notice requirements of interstate child custody proceedings. *Lawrence v. Lewis*, No. 1:15-CV-191, 2015 WL 1299285, at *2 n.4 (S.D. Ohio Mar. 23, 2015); *Klam v. Klam*, 797 F. Supp. 202, 205 (E.D.N.Y 1992). Pursuant to the PKPA, "[b]efore a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given." 28 U.S.C. 1738A(e). As other courts have found, however, "nothing in the statute appears to prevent a temporary restraining order without notice that maintains the status quo as to physical custody where such an order is otherwise appropriate under Rule 65(b)." *Lawrence*, 2015 WL 1299285, at *2 n.4.

that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). The Court has already determined that plaintiff may suffer irreparable injury if the Court does not maintain the status quo until plaintiff's petition is adjudicated fully. *See supra* Section III.B. The same reasoning applies for why plaintiff will suffer irreparable injury before defendant can be heard in opposition, as there is a risk that defendant could, again, conceal the child's location. *Id.* For these same reasons, notice would defeat the purpose of the relief plaintiff seeks. *See Lawrence*, 2015 WL 1299285, at *4 (finding that notice was not required because of the risk that respondent would attempt to evade the court's order by leaving the jurisdiction).

Rule 65(b) also requires that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Other courts that have considered the issue have found that notice is not required when plaintiff establishes a risk of immediate and irreparable injury, even if plaintiff's counsel does not appear to have certified in writing any efforts made to give notice. *See, e.g.*, *Lawrence*, 2015 WL 1299285, at *4 (granting a TRO without notice without noting whether plaintiff's counsel certified in writing any efforts made to give notice); *Mauvais v. Herisse*, No. CIV. A. 13-13032-GAO, 2013 WL 6383930, at *1 (D. Mass. Dec. 4, 2013) (stating that "[i]ssuance of an injunction without prior notice to defendant is necessary due to the possibility . . . that the children might be concealed or taken from this jurisdiction before the injunction can be served"); *Culculoglu*, 2013 WL 1413231, at *2 (holding that, "because of the risk that Respondent will flee this jurisdiction with the

12

children, . . . it [is] necessary to grant this Motion for Temporary Restraining Order without notice to Respondent); *Wood v. Wood*, No. 13-CV-3046-TOR, 2013 WL 1907492, at *4 (E.D. Wash. May 8, 2013) (reasoning that it was appropriate for the TRO to be issued without notice to respondent for the same reasons that warranted issuing the TRO to begin with, including the dangers of petitioner being unable to locate the child in the future); *Mikovic v. Mikovic*, No. 3:07-CV-69732-TEM, 2007 WL 2225979, at *2 (M.D. Fla. Aug. 1, 2007) (finding that entry of a TRO without prior notice was appropriate because "[t]he likelihood that Respondent will flee this Court's jurisdiction with [the child] will increase dramatically when she is served with the Verified Petition seeking return of [the child]"). Like these courts, the Court finds that the risk that defendant may leave the jurisdiction once she has notice of plaintiff's verified complaint warrants issuing a TRO without notice.

Rule 65 also requires the Court to determine whether bond is required in this case. Fed. R. Civ. P. 65(c). As the Sixth Circuit has stated, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978)). The Court finds that bond in this case would be nominal, as the order just requires defendant to not leave the jurisdiction until the Court has a hearing on the merits of plaintiff's petition. *Mikovic*, 2007 WL 2225979, at *2 (waiving the bond requirement "as this is not a case suited to monetary bonds"); *Morgan v. Morgan*, 289 F. Supp. 2d 1067, 1070 (N.D.

13

Iowa 2003) (stating that any bond in this type of case would be "nominal"). In its discretion, the Court finds that bond is not required in this case.

## V. Ordering Defendant to Appear with the Child

Plaintiff also seeks to have the Court order the United States Marshals Service to direct defendant to appear before the Court with the child for an expedited hearing on the merits of his petition [Doc. 1 ¶ 30]. The ICARA provides that, in proceedings for the return of a child, courts may not "order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." 22 U.S.C. § 9004.

In Tennessee, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") governs domestic and international child custody disputes. Tenn. Code Ann. §§ 36-6-201 *et seq.* The UCCJEA provides that "the court may order a party . . . who is in this state to appear before the court in person with or without the child" and the court may order any person who is in the state and who has physical custody of the child "to appear in person with the child." Tenn. Code Ann. § 36-6-225. Plaintiff's verified complaint alleges that defendant is in Tennessee [Doc. 1 ¶ 27]. Accordingly, the Court finds that it can order defendant to appear with the child at the hearing set by the Court.

## VI. Conclusion

Upon balancing each of the factors for determining whether to grant a TRO, and pursuant to Federal Rules of Civil Procedure 65(b) and (c), the Court finds that plaintiff has demonstrated that a TRO is warranted in this case. Plaintiff's petition for the

14

issuance of an immediate order prohibiting the child from being removed from this Court's jurisdiction is hereby **GRANTED**.

Defendant Alma Soto Soto is hereby **TEMPORARILY ENJOINED** as follows:

1. Defendant shall not take any action to remove the child from the jurisdiction of this Court.

2. This temporary restraining order shall expire within fourteen days of this order, unless, prior to that time, the order is extended upon good cause shown, the parties consent to a longer period, or the hearing is continued upon good cause shown and the order is extended until the time of such hearing.

3. This temporary restraining order shall be binding on the parties to this action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order. *See* Fed. R. Civ. P. 65(d)(2).

In addition, the parties are **ORDERED** to appear for a preliminary injunction hearing on **Tuesday, January 12, 2016, at 2:00 p.m.** in Courtroom 4 of the Howard H. Baker, Jr. United States Courthouse at 800 Market Street, Knoxville, Tennessee 37902, at which date and time defendant shall (1) show cause why she should not be prohibited from removing the child from this Court's jurisdiction until this proceeding is concluded and (2) provide for the appearance and physical presence of the child involved in this dispute. The parties are advised that the Court "may advance the trial on the merits and consolidate it with the [preliminary injunction] hearing." Fed. R. Civ. P. 65(a)(2).

15

Finally, the Court **DIRECTS** the United States Marshals Service to personally serve a copy of this order upon defendant at either the address provided in the certificate of service attached to the verified petition (103 Suburban Road, No. D-201, Knoxville, Tennessee 37923) [Doc. 1 p. 15], which appears to be the address of her attorney [*See* Doc. 1-9], or any other known address for defendant. Any service effectuated by the Marshals Service will not relieve plaintiff of his obligation to serve defendant in accordance with Rule 4 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE