UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EUGENIO GARDUNO GUEVARA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cv-548-TAV-CCS |
| | ) | |
| ALMA SOTO SOTO, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the referral Orders of the District Judge [Docs. 27, 35].

Now before the Court is the Verified Emergency Petition for Warrant of Arrest in Lieu of Writ of Habeas Corpus and for Return of Child to Mexico [Doc. 29] ("Emergency Petition")[1] and Petitioner's Motion to Reopen Case for the Issuance of Provisional Remedies [Doc. 33]. The parties appeared before the Court on May 31, 2016, for a motion hearing on the Emergency Petition [Doc. 29]. Attorney Suzanne Landers, who appeared telephonically, was present on behalf of the Petitioner. Attorney Scott Saidak was present on behalf of the Respondent. During the hearing, the Court heard testimony from the Petitioner. At the conclusion of the hearing, the Petitioner requested additional time to file a post-hearing brief, which the Court permitted.

The Court has considered the Emergency Petition, the testimony from the Petitioner, and the Motion to Reopen. Accordingly, the Court **RECOMMENDS** that the Emergency Petition [Doc. 29] be **GRANTED IN PART AND DENIED IN PART** and that the Motion to Reopen be **DENIED** [Doc. 33].

---

[1] The Petitioner originally filed the Emergency Petition on May 23, 2016, [Doc. 26], but later filed a "corrected" Emergency Petition on May 26, 2016, [Doc. 29]. The Court will only refer to Doc. 29.

1

## I. BACKGROUND

By way of background, on April 15, 2016, the Chief District Judge granted the Plaintiff's Petition for Return of his Child to Mexico. [Doc. 20]. Specifically, the Chief District Judge stated, "It is hereby **ORDERED** that defendant is to return the child to Mexico, the country of the child's habitual residence." [Doc. 20]. In the Memorandum Opinion [Doc. 20], the Chief District Judge stated, "The parties are to decide among themselves the means and manner of the child's return to Mexico." The parties were unable to decide among themselves the means and the manner of the child's return to Mexico, and the issue was referred [Doc. 21] to the undersigned.

On May 2, 2016, the Court held a telephonic hearing. Attorneys Suzanne Landers and Lucie Brackin appeared on behalf of the Petitioner, and Attorney Scott Saidak was present on behalf of the Respondent. After hearing from both parties, the undersigned orally ordered the Respondent to transport the child to La Luz, Michoacan, Mexico, by May 16, 2016. The undersigned's Order was entered on May 3, 2016. [Doc. 22].

## II. POSITIONS OF THE PARTIES

The Petitioner filed the instant Emergency Petition alleging that until May 2, 2016, the Petitioner had regular telephone access to the child via the Respondent's cellular telephone. Since May 2, however, the Petitioner states that he has been unable to reach the child via telephone. The Petition alleges that instead of complying with the Court's Order to return the child to La Luz, the Respondent has fled with, abducted, and is concealing the child and the child's location. The Petitioner alleges that he traveled to La Luz, Michoacan, Mexico, on May 16, 2016, and May 17, 2016, to the maternal grandmother's residence, but the child was not

there. The Petitioner states that the child is not at any other location known to him. In addition, the Petitioner states that on May 17, he was advised by the Respondent's sister that the Respondent and the child were still located in the United States, but the Respondent's sister would not share the location.

The Petition requests that a Warrant of Arrest issue to bring the minor child and the Respondent into this Court and that the Court order the child to be delivered immediately to the Petitioner in the United States so that the child may be transported to La Luz, Michoacan, Mexico.

In response to the Petition, Attorney Saidak filed a limited response [Doc. 28] stating, "[A]fter numerous attempts at contacting Mother, Attorney has had no contact with Mother since May 3, 2016, wherein Attorney explained the terms of the Court's Order to Mother and her options for appeal." The Limited Response also states that Attorney Saidak has "very limited contact" with Respondent's immediate family in the area of the Eastern District of Tennessee and that he has been informed that "Mother's whereabouts are unknown."

### III. SUMMARY OF TESTIMONY

Based on the above, the Court scheduled a hearing in this matter on May 31, 2016. The Petitioner testified that he is the father of the child. He testified to the child's name and to the child's birthdate.[2] The Petitioner testified that he had regular contact with the child, via Respondent's cellular telephone, from the time of trial until May 2, 2016. The last time he spoke to his child was on May 2, 2016. The Petitioner testified that after May 2, when he tried to call the telephone number, the telephone would not ring.

---

[2] The Court will not disclose this information in order to protect the minor child's identity.

3

Case 3:15-cv-00548-TAV-CCS   Document 36   Filed 08/18/16   Page 3 of 11   PageID #: 336

The Petitioner testified that on May 16, 2016, he traveled to La Luz, Mexico, to visit the maternal grandparents, where the Respondent previously lived. The Petitioner stated that the Respondent and child were not there. The Petitioner testified that he has traveled to La Luz, Mexico approximately four or five times, but he cannot locate his son or the Respondent. Upon questioning from the Court, the Petitioner testified that La Luz, Mexico is a small community and that the last time he visited La Luz was the previous Friday.

At the conclusion of the hearing, the Court granted the Petitioner's request to file a post hearing brief. Subsequently, the Petitioner filed a brief [Doc. 34] in support of the Emergency Petition. In addition, the Petitioner filed a Motion to Reopen Case for the Issuance of Provisional Remedies [Doc. 33]. In his Motion, the Petitioner requests the Court reopen the case so that he may proceed more efficiently under 22 U.S.C. § 9004 and seek the provisional remedy of a warrant for the Respondent's arrest in order to bring Respondent and the child before this Court.

## IV. FINDINGS OF FACT

Based upon the filings and the testimony offered at the May 31 hearing, the Court certifies the following factual findings:

On April 15, 2016, the Chief District Judge ordered the Respondent to return the child to Mexico, the country of the child's habitual residence. Subsequently, on May 2, 2016, the undersigned verbally ordered the Respondent to transport the child to La Luz, Michoacan, Mexico, by May 16, 2016. Since the trial in this matter, the Petitioner maintained regular contact with the child using the Respondent's cellular telephone. However, on May 2, 2016, when the Respondent attempted to contact the child, the cellular telephone would not ring. On May 16, 2016, the date the child was to be returned to La Luz, Mexico, the Petitioner visited

4

Respondent's grandparents, where Respondent previously lived, but the child and the Respondent were not there. The Petitioner made approximately four or five trips to La Luz, Mexico but has been able to locate the child.

Based on the following facts, the Court finds that the Respondent failed to comply with the undersigned's Order, which ordered the Respondent to return the child to La Luz, Mexico, by May 16, 2016.

V.  ANALYSIS

As mentioned above, in the Emergency Petition, the Petitioner has moved this Court to issue a Warrant for Arrest commanding that any appropriate law enforcement agency use any means necessary to locate the child and the Respondent and to bring the child and Respondent into this Court so that the Respondent may show cause as to why the child has not been returned as ordered. The Petitioner also requests an order that the child be delivered immediately to the Petitioner in the United States, so that the Petitioner can transport the child to La Luz, Mexico. Further, the Petitioner requests that: (1) any orders issued by the Court be placed under seal; (2) the child be registered with the Children's Passport Issuance Alert Program; and (3) the Respondent's and child's names be registered with the National Crime Information Center. Finally, with respect to the Petitioner's Motion, he requests that the Court reopen this case for the issuance of provisional remedies as requested in the Emergency Petition.

The Court finds no reason to reopen this case for the issuance of provisional remedies requested in the Emergency Petition because federal procedural and state substantive laws support Petitioner's requested relief. The Court will first analyze its recommendations with respect to the Respondent. The Court will then address its recommendations regarding the child.

*(a)     Respondent*

As explained by the Sixth Circuit, "When a court seeks to enforce its order or supervise its judgment, one weapon in its arsenal is contempt of court." Elec. Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Elec. Serv. Co., 340 F.3d 373, 379 (6th Cir. 2003) (citing NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 588 (6th Cir. 1987)); see also Stooksbury v. Ross, No. 3:09-cv-498, 2014 WL 4384457, at *4 (E.D. Tenn. Sept. 4, 2014) ("A court may hold someone in contempt if there is "clear and convincing evidence that shows that [person] violated a definite and specific order of the court requiring [that person] to perform or refrain from performing a particular act or acts with knowledge of the court's order.") (Quoting Gary's Elec. Serv. Co., 340 F.3d 373, 379 (6th Cir. 2003)). The undersigned's role in contempt cases is to certify facts relevant to the issue of contempt to the District Judge. See 28 U.S.C. § 636(e)(6)(B); The Euclid Chemical Company v. Ware et. al., No. 1:11-cv-135, 2013 WL 6632436, at *1 (S.D. Ohio Dec. 17, 2013) (stating the same).

In the present matter, on April 15, 2016, the Chief District Judge found that the Petitioner "met his burden in establishing that the child's removal was wrongful." [Doc. 19 at 17]. Accordingly, this Court has already found that the child was wrongfully removed in violation of the Hague Convention. See Tenn. Code Ann. § 36-6-239. In order to remedy the child's wrongful removal, the Chief District Judge ordered the Respondent to return the child to Mexico, the country of the child's habitual residence. Subsequently, because the parties could not agree on the means and manner of the child's return to Mexico, the undersigned, on May 2, 2016, verbally ordered the Respondent to take the child to La Luz, Michoacan, Mexico, by May 16, 2016.[3]  During the May 31 hearing, the Petitioner testified that on May 16 he visited the Respondent's grandparents in La Luz, where Respondent previously lived, but the child and

---

[3] As mentioned above, the Order was entered on May 3, 2016.

Respondent were not there. The Petitioner testified that he has taken four or five trips to La Luz, Mexico and cannot locate the Respondent or the child. He has not had any contact with the child since May 2, 2016, notably when this Court ordered the child to be returned on May 16.

Based on the record before it, the Court finds that the Respondent has violated the Chief District Judge's Order and the undersigned's Order and has thwarted the purpose of the Hague Convention which is to "ensure the prompt return" of the child. See Roche v. Hartz, 783 F. Supp. 2d 995, 999 (N.D. Ohio Mar. 7, 2011) (quoting the Hague Convention preamble). Accordingly, the Court **RECOMMENDS** that the Chief District Judge issue a show cause order to Respondent to appear at a date certain before the District Judge to show cause why she should not be held in contempt for failing to obey the Court's Orders.

*(b) Minor Child*

As mentioned above, the Respondent failed to return the child to La Luz, Mexico, on May 16, 2016. The Petitioner requests that the Court order the child to be delivered immediately to him in the United States so that the child may be transported to La Luz, Michoacán, Mexico. Given the circumstances in this case, the Court agrees.

Pursuant to Federal Rule of Civil Procedure 70, the Court has the power to enforce its own judgments. Specifically, Rule 70 provides:

> **(a) Party's Failure to Act; Ordering Another to Act.** If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done--at the disobedient party's expense--by another person appointed by the court. When done, the act has the same effect as if done by the party.

In Bernal v. Gonzalez, the court was faced with a similar situation. No. 7:12-cv-00091-DC (W.D. Tx. Dec. 12, 2012) [Doc. 51]. In Bernal, the court entered judgment in favor of the petitioner in her suit for the return of her children under the Hague Convention. In its judgment,

7

the court ordered that the children be immediately returned to the custody of the petitioner. Id. The respondent failed to comply with the court's order requiring the return of the children to petitioner. Id. Therefore, the court granted the petitioner's motion to enforce judgment and application to clerk to issue writ of attachment and ordered the respondent to deliver the children to the petitioner's designee at the Consulate for the Republic of Mexico. Id. Finally, the court ordered the clerk to issue a Writ of Attachment under Rule 70 should the respondent fail to deliver the children. Specifically, the court ordered:

> The Clerk's Writ of Attachment shall direct the United States Marshals Service to execute the Judgment and attach the children . . . or any location the children may be found, secure them into custody, and then deliver the children to Petitioner's designee at the Consulate for the Republic of Mexico in El Paso, Texas.

Id.

In addition, as noted by Petitioner, while the International Child Abduction Remedies Act ("ICARA") does not include specific provisions for the enforcement of a return order, it does permit courts to utilize other remedies. Pursuant to 22 U.S.C. § 9004, "No court exercising jurisdiction of an action brought under section 9003(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." See also 22 U.S.C. § 9003(h) (explaining that "[t]he remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements"); Fed. R. Civ. P. 64 ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.").

Pursuant to Tennessee law, "A court of this state may enforce an order for the return of the child made under the Hague Convention on the Civil Aspects of International Child

8

Abduction as if it were a child-custody determination." Tenn. Code Ann. § 36-6-226. Further, Tennessee law provides:

> (a) In a case arising under this part or involving the Hague Convention on the Civil Aspects of International Child Abduction, the prosecutor or other appropriate public official may take any lawful action, including resort to a proceeding under this part or any other available civil proceeding to locate a child, obtain the return of the child, or enforce a child-custody determination if there is:
> . . .
>
> (4) A reasonable belief that the child has been wrongfully removed or retained in violation of the Hague Convention as the Civil Aspects of International Child Abduction.

Tenn. Code Ann. § 36-6-239; see also Tenn. Code Ann. § 36-6-235 (noting that a court may issue a warrant to take physical custody of a child if the court finds that the child is imminently likely to suffer serious physical harm or be removed from this state).

As stated above, the Chief District Judge ordered Respondent to return the child to Mexico. In addition, the undersigned ordered the Respondent to return the child to La Luz, Michoacán, Mexico by May 16, 2016. The Respondent failed to return the child to La Luz as ordered. Accordingly, in order to enforce this Court's Orders and to fulfill the purpose of the Hague Convention, which is to ensure the prompt return of the child, the Court hereby **RECOMMENDS** that the Clerk of Court issue a writ of attachment that directs the United States Marshals Service to execute judgment and attach the child. See Fed. R. Civ. P. 70. Once the child is in custody, the undersigned **RECOMMENDS** the United States Marshals Service place the child with the Tennessee Department of Human Services. Further, the Court **RECOMMENDS** that the Tennessee Department of Human Services make appropriate arrangements with the U.S. Central Authority for the child's return to Mexico. The Court **RECOMMENDS** that the Tennessee Department of Human Services coordinate with

Petitioner's counsel and U.S. Central Authority officials to effectuate a smooth transfer of the child to Petitioner or to Mexico at an appropriate border station.

Finally, the Court **RECOMMENDS** that the child's name be placed in the Children's Passport Issuance Alert Program so that the Petitioner may be alerted if someone applies for the child's passport. The Court does not recommend the Respondent's or the child's name to be placed with the National Crime Information Center.

## VI. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS**[4] that the Emergency Petition [**Doc. 29**] to be **GRANTED IN PART AND DENIED IN PART** and that the Motion to Reopen be **DENIED** [**Doc. 33**] and further **RECOMMENDS** as follows:

1. The Respondent appear before the Chief District Judge on a day certain to show cause as to why she should not be held in contempt of Court;

2. The Clerk of Court issue a writ of attachment to direct the United States Marshals Service to attach the child and deliver the child to the Tennessee Department of Human Services for temporary placement. The Tennessee Department of Human Services shall make the appropriate arrangements with the U.S. Central Authority for the child's return to Mexico or to Petitioner. The Tennessee Department of Human Services shall coordinate with Petitioner's counsel and the U.S. Central Authority to effectuate a smooth transfer of the child to Petitioner or to Mexico at an appropriate border station.

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).

3. The child's name be placed in the Children's Passport Issuance Alert Program so that the Petitioner may be alerted if someone applies for the child's passport.

4. The Clerk of Court **SHALL** send a copy of this Report and Recommendation to Attorney Scott Saidak and to Respondent's last known address.

Respectfully submitted,

<u>s/ C. Clifford Shirley, Jr.</u>
United States Magistrate Judge